IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KENNETH W. BARNETT, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-cv-463-MEF |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| FINANCE Risk Management Division, | ) | |
| | ) | |
| Defendant. | ) | |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.    INTRODUCTION

Plaintiff filed his Complaint (Doc. #1) alleging a failure to promote claim based on

gender and age discrimination, and a retaliation claim, all in violation of Title VII of the Civil

Rights act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967

("ADEA").[1]   On June 20, 2011, the District Judge entered an Order (Doc. #5) referring this

---

[1] The court notes that Plaintiff's Complaint is not a model of clarity.  Indeed, his Complaint and
attached EEOC filing appear to allege many violations of Title VII and the ADEA, but many of
those allegations fall short of the pleading requirements under Rule 8 of the Federal Rules of
Civil Procedure.  Plaintiff is *pro se*, and in reading his Complaint and his various pleadings the
court was able to discern the two discrete claims mentioned above.  Plaintiff's claims of gender
and age discrimination are related to his failure to promote claim. In other words, Plaintiff claims
he was not promoted based on his gender and age.  The other acts of discrimination he complains
of are related to his retaliation claim, *i.e.*, Plaintiff claims he was harassed and retaliated against
based on his complaint to the EEOC for Defendant's failure to promote. In arriving at these two
claims and the sub-claims, the court has reviewed Plaintiff's Complaint, his pleadings, and the
numerous exhibits filed in support of his pleadings, applied the broadest reading, and given
Plaintiff the benefit of the doubt where necessary.

matter to the undersigned Magistrate Judge "for all pretrial proceedings and entry of any orders or recommendations as may be appropriate."

Before the court is Plaintiff's Motion for Summary Judgment (Doc. #30). Defendant filed a Response (Doc. #36) to the Motion, challenging Plaintiff's ability to establish a *prima facie* case as to his claims under Title VII and ADEA[2] and argued that even if Plaintiff could establish a *prima facie* case, Defendant has rebutted it and Plaintiff cannot overcome the rebuttal. Because the court was asked to make determinations as to whether Plaintiff could establish a *prima facie* case, the court determined that it would convert Defendant's Response (Doc. #36) into a Response and Cross-Motion for Summary Judgment. Plaintiff filed a Response (Doc. #45) to the Cross-Motion, to which Defendant filed a Reply (Doc. #48). Upon consideration of Plaintiff's Motion for Summary Judgment (Doc. #30), Defendant's Cross-Motion for Summary Judgment (Doc. #36), the pleadings of the parties, and the evidentiary materials filed in support thereof, the court concludes that Plaintiff's Motion for Summary Judgment (Doc. #30) is due to be denied and Defendant's Cross-Motion for Summary Judgment (Doc. #36) is due to be granted.

## II.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as

---

[2] Due to the aforementioned problems with discerning Plaintiff's Complaint and what claims are pled therein, Defendant's Response appears to cover every possible avenue of defense against claims of discrimination. However, the court was able to apply the defenses raised in the Response to Plaintiff's failure to promote and retaliation claims.

to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[3]   Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).   "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.   An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir.1996) (quoting *Anderson*, 477 U.S. at 248).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion[,]" and alerting the Court to portions of the record which support the motion. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the non-movant is then similarly required to cite to portions of the record which show the existence of a material factual dispute. *Id.* at 324.   In doing so, and to avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."

---

[3]      On December 1, 2010, amendments to Rule 56 became effective.   The instant motion was filed on December 3, 2010.   The amendments to Rule 56 generally reorganize the provisions of the Rule and incorporate language which is "intended to improve the procedures for presenting and deciding summary judgment-motions and [is] . . . *not intended to change the summary-judgment standard or burdens.*" *Farmers Ins. Exchange v. RNK, Inc.*, 632 F.3d 777, 782 n.4 (1st Cir. 2011) (internal quotations omitted) (emphasis in original).   Moreover, because the summary judgment standard remains the same, the amendments "will not affect continuing development of the decisional law construing and applying" the standard now articulated in Rule 56(a).   Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendments.   Accordingly, while the Court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the non-movant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson*, 477 U.S. at 255. After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

III.    **STATEMENT OF UNDISPUTED FACTS**

The Court has carefully considered the pleadings in this case and all documents submitted in support of, and in opposition to, the Motion for Summary Judgment and Cross-Motion for Summary Judgment.  The submissions of the parties establish the following relevant facts:[4]

Plaintiff is a white male, and was approximately sixty-five years of age at the time the relevant events in this matter took place. Compl. (Doc. #1-1) at 1.  Defendant is the Alabama Department of Finance.  Plaintiff was formerly employed as a Loss Control Specialist by the Alabama Department of Finance. In October of 2009, Defendant sought to fill the position of Risk Management Supervisor. Plaintiff and four other applicants, including Elizabeth Fralish, were deemed eligible applicants by Defendant.  Def.'s Cross-Mot. (Doc. #36-2).  At the time Plaintiff applied for the promotion, he had worked for Defendant as a Loss Control Specialist for approximately seventeen years, whereas Fralish had been employed with Defendant as a Loss Control Specialist for just under one year.  *Id*; Def.'s Cross-Mot. (Doc. #36-10) at 2.  In November of 2009, Defendant promoted Fralish to the position of Loss Control Specialist.  Pl.'s Mot. (Doc. #30) at 2.  On or about the date of Fralish's promotion,

_____

[4]    Due to the unique circumstances of the filing of the briefs in this case (Plaintiff filing the Motion for Summary Judgment and the court converting Defendant's Response into a cross-motion), neither party submitted a statement of undisputed facts.  As a result, the court's following recitation of undisputed facts consists of facts which are either admitted by Plaintiff, are not rebutted by Plaintiff, or are supported by documentary evidence which Plaintiff has not challenged.  *See* Fed. R. Civ. P. 56(e)(2).

"Plaintiff verbally complained to his supervisors about not receiving a promotion and

continued to complain up to [] Plaintiff's last day at work." *Id*.

> On August 25, 2010, Plaintiff entered into Ms. Fralish's office to discuss an
> issue with the software that is used in the Loss Control Division. During this
> conversation, Ms. Fralish noticed that Plaintiff had a recording device hidden
> in his sleeve. Ms. Fralish proceeded to question Plaintiff about his actions;
> however, Plaintiff denied that he was recording the conversation. (Ex. 6). Ms.
> Fralish immediately notified Mr. Smith of the incident. Mr. Smith, on August
> 26, 2010, questioned Plaintiff as to his actions and Plaintiff refused to answer
> questions regarding the incident from the previous day. (Ex. 6). Mr. Smith
> escorted Plaintiff to the Division Director's Office where he was questioned
> by Mr. Spillers. Plaintiff refused to answer any of the questions from his
> supervisors so Mr. Spillers instructed that Plaintiff was to be disciplined for
> insubordination. (Ex. 6).

Def.'s Cross-Mot. (Doc. #36) at 2.[5]  On August 27, 2010, Fralish recommended that Plaintiff

be suspended.  *Id*. (Doc. #36-6) at 3.  On Saturday, August 28, 2010, at 6:23p.m., Plaintiff

emailed Fralish and other employees of Defendant to inform them that he had contacted the

EEOC with claims of harassment, abuse, and discrimination.  Pl.'s Mot. (Doc. #30-1); Pl.'s

Reply (Doc. #39) at 2.  Plaintiff filed a charge of discrimination with the EEOC on

September 7, 2010.  Def.'s Cross-Mot. (Doc. #36-7).  On September 10, 2010, Plaintiff was

informed that he was to be suspended without pay due to the August 25, 2010 incident, but

that he had a right to a pre-suspension hearing. *Id*. (Doc. #36-6) at 4.  On September 24,

2010, Plaintiff informed Defendant that he intended to retire on November 1, 2010, and that

he planned to use his remaining medical and annual leave to remain out of the office until

---

[5] This recitation of the facts goes undisputed by Plaintiff and is supported by Defendant's
evidentiary submissions.

the date of his retirement.  Pl.'s Reply (Doc. #39-1) at 1-4. Plaintiff also waived his pre-suspension hearing.  Def.'s Cross-Mot. (Doc. #36-6).  The EEOC issued its determination on March 16, 2011. *Id*. (Doc. #36-8).  Plaintiff subsequently filed his complaint with this court on June 14, 2011.  Compl. (Doc. #1).

## IV.   DISCUSSION

### A.   *Failure to Promote*[6]

Plaintiff claims that he was subjected to unlawful discrimination on the basis of his gender and age in violation of Title VII and the ADEA.  Specifically, Plaintiff complains that Defendant failed to promote Plaintiff to the position of Loss Control Supervisor on the basis of his gender and age.   In order to survive, or in this case win, a motion for summary judgment, Plaintiff must first establish a *prima facie* case of discrimination.  Because the test for establishing a *prima facie* case under Title VII and the ADEA are essentially the same, the court will address these claims together.  *See e.g. Baker v. Sears, Roebuck & Co.*, 903 F.2d 1515, 1519 (11th Cir. 1990).

---

[6] The court notes that "[T]he time for filing an EEOC charge begins to run when the employee receives unequivocal notice of the adverse employment decision." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1100 n. 19 (11th Cir. 1996).  In this case, Plaintiff was not promoted in November of 2009, yet Plaintiff's EEOC complaint was not filed until September 7, 2010.  Thus, it appears that Plaintiff filed his EEOC complaint more than 180 days after the adverse employment decision and was therefore untimely.  The 180 day time limitation applies to ADEA charges as well. *Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1201 (11th Cir. 2003) ("To file a civil lawsuit for age discrimination, the ADEA requires a plaintiff first to file a discrimination complaint with the EEOC 'within 180 days after the alleged unlawful practice occurred.'") (quoting 29 U.S.C. § 626(d)(1)).

"A *prima facie* claim of discrimination can be established three ways: 1) direct evidence; 2) circumstantial evidence; or 3) statistical proof." *Davis v. City of Panama City, Fla.*, 510 F. Supp. 2d 671, 681 (N.D. Fla. 2007) (citing *Earley v. Champion Int'l Corp.*, 907 F. 2d 1077, 1081 (11th Cir.1990)).

Plaintiff does not offer statistical evidence and makes no express contention that he has offered direct evidence of discrimination. Rather, Plaintiff has submitted emails that he contends evince discrimination. "To qualify as direct evidence of discrimination, we require that a biased statement by a decision-maker be made concurrently with the adverse employment event, such that no inference is necessary to conclude that the bias necessarily motivated the decision." *Williamson v. Adventist Health System/Sunbelt, Inc.*, 372 F. App'x 936, 940 (11th Cir. 2010) (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1349 (11th Cir. 1999)). A review of the emails confirms that Plaintiff does not offer direct evidence. Rather, Plaintiff draws inferences from statements in the emails and the decisions made regarding promotions and his employment situation. Thus, Plaintiff attempts to establish a *prima facie* case through circumstantial evidence.

When a Plaintiff attempts to establish a *prima facie* claim of discrimination through circumstantial evidence, the court must utilize the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny.

> "Under this framework, the plaintiff must establish a prima facie case of discrimination. The establishment of a prima facie case creates a presumption of discrimination. The employer must then offer legitimate, nondiscriminatory reasons for the employment action to rebut the presumption. If the employer

successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual."

*Standard v. A.B.E.L. Serv., Inc.*, 161 F.3d 1318, 1332 (11th Cir. 1998).   A plaintiff may establish a *prima facie* case of failure-to-promote by showing that: "(1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted."   *Wilson v. B/E Aerospace*, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004). In the present case, Defendant concedes that Plaintiff is a member of a protected class and that Plaintiff was qualified and was rejected despite his qualifications. Defendant does argue that Fralish was better qualified for the position. Specifically, Defendant points to Fralish's degree in "Building Science," and her twenty-two years of experience in "evaluations of structures."  Def.'s Mot. (Doc. #36) at 6.  Plaintiff on the other hand, holds a degree in theology, but did have experience as a Loss Control Specialist. *Id*.  Thus, it does not appear that Fralish and Plaintiff were equally qualified, and Plaintiff is unable to establish that Fralish was less qualified for the position.

More importantly, Defendant offers non-discriminatory reasons for selecting Fralish over Plaintiff.  Defendant points to Plaintiff's record of disciplinary actions during his tenure with Defendant, including: (1) a memorandum issued to Plaintiff in 2001 "instructing him to cease working on his personal legal work while on state time;" (2) Plaintiff's "letter of reprimand on October 26, 2004 for his confrontation with the Chief of Campus Security for

9

Bevill State Community College;" (3) Plaintiff's 2007 "warning for his disrespectful behavior during a meeting with Auburn University Montgomery;" (4) the warnings issued to Plaintiff in March of 2010 relating to his conducting campaign activities while at work; and (5) Plaintiff's receiving a "counseling session" due to his failure to attend a mandatory training session in its entirety. *Id.* at 7.  Once Defendant has set forth non-discriminatory reasons for the promotion decision, the burden shifts to Plaintiff to "then establish that the defendant's proffered reasons for the employee's rejection were pretextual." *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000).

Plaintiff fails to rebut Defendant's proffered reasons.  Plaintiff merely argues that he had been promised the job, that he was qualified for it, and that he was more qualified than Fralish because she had only been a Loss Control Specialist since 2008.  "[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer." *Id.* (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997)).  In addition, Plaintiff "cannot prove pretext by asserting baldly that [he] was better qualified than the person who received the position at issue.  [Plaintiff] must instead adduce evidence that the disparity in qualifications was 'so apparent as virtually to jump off the page and slap you in the face.'" *Wilson,* 376 F.3d at 1090 (quoting *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001)).  Plaintiff's assertion that he was more qualified for the position because he had worked as a Loss Control Specialist longer than

Fralish, does not "slap this court in the face," considering Fralish's degree and her twenty-two years of experience in "evaluations of structures." *See id*. ("For the discrepancies to 'jump off the page and slap you in the face,' they must be of such weight and significance that no reasonable person could have chosen [Fralish] over [Plaintiff].")

Further, Plaintiff must point this court to the discriminatory basis for the failure to promote, because court's "are not in the business of adjudging whether employment decisions are prudent or fair. Instead our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Plaintiff offers no evidence to rebut Defendant's asserted non-discriminatory reasons and fails to establish that the decision to reject his application was due to either his age or gender. Plaintiff merely asserts that Robert Smith preferred Fralish because she was a younger woman. These bald assertions fall well below the *McDonnell Douglas* standard for avoiding summary judgment once the burden has shifted. The court finds that Plaintiff has failed to establish a *prima facie* case of discrimination on the basis of age or race in Defendant's decision to promote Fralish over Plaintiff and that even were the court to assume a *prima facie* case had been made, Plaintiff has failed to show that Defendant's asserted non-discriminatory reasons for failing to promote Plaintiff were pretext. Accordingly, Defendant is entitled to summary judgment on Plaintiff's failure to promote claim.

11

### B.     Retaliation

In order to establish a *prima facie* case of Title VII retaliation, Plaintiff must show "(1) statutorily protected expression, (2) adverse employment action, and (3) a causal link between the protected expression and the adverse action." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). Plaintiff argues that he was retaliated against when he filed a complaint with the EEOC pertaining to his failure to be promoted to the position of Loss Control Specialist.  Pl.'s Mot. (Doc. #30) at 3.  Specifically, he states that after he filed charges with the EEOC he was threatened with suspension without pay, was subjected to a change in job duties, told that he should only communicate about working conditions with Chief Legal Counsel at the Alabama Department of Finance, was denied access to the workplace and communication with other employees, and told to return all state property and remove his personal effects from his office, eventually leading to Plaintiff's retirement.  *Id*. at 5.

Two of Plaintiff's allegations are not of adverse employment actions.  An employment action is adverse when it "results in some tangible, negative effect on the plaintiff's employment" through "a serious and material change in the terms, conditions or privileges of employment . . . as viewed by a reasonable person in the circumstances.  *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1181 (11th Cir. 2003). Plaintiff alleges that he was subjected to a change in job duties, in that he was required to conduct "field survey work."  Pl's. Mot. (Doc. #30) at 3-4.  The change Plaintiff alleges does not amount to a serious or material

change in the terms of his employment, he  does not allege a change in salary, title, work hours, or benefits.  *See e.g. Belt v. Alabama Historical Comm'n*, 181 F. App'x 763, 764 (11th Cir. 2006).  He merely complains that he was made to work "in the field" and not at his desk. Similarly, Plaintiff's allegation that he was informed that he was to speak directly to the Department's Chief Legal Counsel regarding his complaints about working conditions is not an allegation regarding an adverse employment action.  Plaintiff had filed charges with the EEOC, thus, further complaints regarding working conditions were reasonably directed to the department's legal counsel.  Again, this is not an allegation of an adverse working condition.

With regard to his remaining allegations, Plaintiff has failed to show a causal link between the protected expression and adverse action.  It appears that Plaintiff intends to show a causal link through the temporal proximity of the adverse action to the protected activity, *i.e.*, Plaintiff filed his complaint with the EEOC and Defendant responded with retaliation. It is possible for a plaintiff to show a causal link through temporal proximity if he can provide evidence that Defendant knew of the protected activity and the adverse action occurred in close temporal proximity to learning of the protected activity.  *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004); *Grier v. Snow*, 206 F. App'x 866, 868 (11th Cir. 2006)("To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse act were

at least somewhat related and in close temporal proximity."). In this case, Plaintiff is unable to establish that the "retaliation" was either somewhat related or in temporal proximity.

Although the dates of the alleged adverse action occurred around the same time as when he filed his complaint with the EEOC, Defendant became aware of Plaintiff's contact with the EEOC *after* Defendant had begun instituting disciplinary proceedings. Plaintiff filed his EEOC complaint after he was caught attempting to tape record meetings between himself and his superiors on August 26, 2010. On August 27, 2010, Fralish recommended that Plaintiff be suspended. Def.'s Cross-Mot. (Doc. #36-6) at 3. According to Plaintiff, he did not inform Defendant that he had contacted the EEOC until the next day, August 28, 2010.[7] Pl.'s Reply (Doc. #39) at 2. Because Plaintiff informed Defendant of his contact with the EEOC *after* the disciplinary actions were underway, Plaintiff is unable to establish a causal link through the temporal proximity of the adverse actions.[8]

Similarly, Plaintiff is unable to establish that the disciplinary procedure was even somewhat related to his EEOC complaint. Much of what Plaintiff describes as "retaliation" was related to the underway disciplinary proceedings. The "threat" of suspension without

---

[7] According to materials submitted by Plaintiff, he emailed Fralish, Smith, and other employees of Defendant on Saturday evening, August 28, 2010, to inform them that he had contacted the EEOC. Pl.'s Mot. (Doc. #30-1).

[8] In fact, it appears to this court that after what Plaintiff describes as almost a year of constant verbal complaints regarding his failure to be promoted, Pl.'s Mot. (Doc. #30) at 2, a demonstrated history of work related disciplines, and an act of insubordination that Plaintiff would have known would at least result in another discipline, Plaintiff retaliated by filing a complaint with the EEOC.

pay was the recommendation made for his alleged wrongdoings in the workplace.  Def.'s
Cross-Mot. (Doc. #36-6) at 3.  As to Plaintiff's allegations regarding his denial of access to
the workplace, Plaintiff states in his Motion that he attempted to deliver his time sheets, leave
slips, and doctor's notes, but was informed that he was only to speak to Chief Legal Counsel
and that only after speaking to another employee (Tucker), was Plaintiff able to deliver the
documents by handing them to Tucker outside the building.  Pl.'s Mot.  (Doc. #30) at 5. He
alleges that this is clear evidence that he was forced to retire, and denied access to the
workplace.  *Id*. That account is contradicted by Plaintiff's own exhibits.  As Plaintiff states
in his Motion, he was placed on medical leave by his doctors on September 23, 2010.
According to Plaintiff's evidentiary submission, on that same day, he informed Fralish that
he intended to retire after using all of his annual leave.  Pl.'s Reply (Doc. #39-1) at 1-4.
Later that day, Plaintiff informed Defendant that he would retire as of November 1, 2010.
*Id*. In an email dated September 30, 2010, Plaintiff recounted how, on that day, his wife had
attempted to deliver his time sheets, leave slips, and doctors notes, and how Tucker had
received the documents outside the building.  Pl.'s Mot. (Doc. 30-1) at 16.  Plaintiff informs
Chief legal Counsel that this was confusing and troubling.  *Id*. In an email sent to Plaintiff
in response, Chief legal Counsel reminded Plaintiff that he had been instructed that his
communications should be directed to Chief legal Counsel, that any future communications
should be directed to an attorney with the state personnel department, that his FMLA forms
should be mailed to the personnel division, and that because he was on sick leave status and

had a retirement date of November 1, 2010, and would remain on leave through the date of retirement,[9] he should return any state property in his possession and collect his personal items.  Thus, Plaintiff was not denied access to the workplace.  He informed Defendant that he would be retiring and using his medical and annual leave to be out of the office until the date of his retirement.  The instructions to return state property and collect his own personal effects were not related to his EEOC claims, but to that of his retirement and his request that he be on leave until his retirement.  Indeed, Plaintiff attaches an email from personnel department counsel dated October 12, 2010, wherein she references a recent letter from Plaintiff where he contends that returning the state owned property would violate his doctors orders to stay away from work.

The court finds that Plaintiff utterly fails to establish a *prima facie* case of retaliation.  Moreover, even were the court to assume a *prima facie* case, as with Plaintiff's gender and race claims, once Defendant puts forth non-retaliatory reasons for its decision "[t]he plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008).  The attachments to Plaintiff's pleadings undermine any claim he has made that Defendant retaliated for the filing of the EEOC complaint.  Plaintiff's failure to establish a *prima facie*

---

[9] Doc. 39-1 p.3

claim of retaliation, or to rebut Defendant's non-retaliatory reasons means that Defendant is entitled to summary judgment on this claim.

## V.   CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Plaintiff's Motion for Summary Judgment (Doc. #30) be DENIED and Defendant's Cross-Motion for Summary Judgment (Doc. #36) be granted.

It is further

ORDERED that the parties are DIRECTED to file any objections to the Recommendation **on or before March 1, 2012**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.   *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en

banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed

down prior to the close of business on September 30, 1981).

Done this 16th day of February, 2012.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE